AO 106 (Rev. 04/10) Application for a Search Warrant                 AUTHORIZED AND APPROVED/DATE: s/Nick Coffey 11/30/2022

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. M-22-890  -STE
IN THE MATTER OF THE SEARCH OF A BLUE HUAWEI PHONE IN A )
CLEAR CASE CONTAINING A "LYCAMOBILE" CARD, LOCATED AT DEA )
OKLAHOMA CITY, 901 NE 122ND ST., OKLAHOMA CITY, OKLAHOMA )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1956(a), (h) | Money Laundering and Conspiracy to do the Same |
| 21 U.S.C. §§ 841, 846 | Poss. / Manuf. / Distrib. Cont. Sub. and Conspiracy to do the Same |

The application is based on these facts:
See attached Affidavit of DEA Special Agent Sean Lively

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days:(_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sean Lively, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Dec 2, 2022**

*Judge's signature*

City and state: Oklahoma City, Oklahoma         Shon T. Erwin, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A **blue Huawei phone in clear case containing a "Lycamobile" card,** LOCATED AT DEA OKLAHOMA CITY, 901 NE 122nd ST., OKLAHOMA CITY, OKLAHOMA | Case No. MJ-22-890-STE |

### **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Sean Lively, Special Agent with the Drug Enforcement Administration (DEA), having been duly sworn, depose and state as follows:

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device identified below and in **Attachment A**, which is currently in law enforcement possession—and the extraction from that property of electronically stored information described in **Attachment B**, which constitute evidence, instrumentalities, and fruit of violations of 18 U.S.C. § § 1956, 1957, and 21 U.S.C. §§ 841(a)(1) and 846.

2. I am a Special Agent with the DEA. As a Special Agent, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and empowered by law to conduct investigations of, and to make arrests for, offenses set forth in 18 U.S.C. § 2516.

3. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Enforcement Group in Oklahoma City of the DEA and have been so since February 3, 2020. Prior to my assignment with HIDTA, I attended the Basic Agent Academy Class in Quantico, Virginia. In addition, I have attended schools or trainings dedicated to drug investigations. Since becoming a Special Agent, I have been involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have participated in many aspects of criminal investigations, including surveillance, applying for and executing search warrants, criminal and administrative arrests, and interviewing and debriefing defendants, informants, and other witnesses. I have also worked with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience, I have become familiar with some of the methods by which illegal drugs are imported, distributed, and sold, as well as the means by which drug traffickers will then "wash" (i.e., launder) their illicit proceeds in order to disguise the source and nature of their profits.

4. I am submitting this Affidavit in support of a search warrant authorizing a search of one cellular telephone: a **blue Huawei phone in a**

2

**clear case containing a "Lycamobile" card** (hereinafter **Target Phone 10**), as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The DEA in Oklahoma City has custody of **Target Phone 10** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of **Target Phone 10** for the purpose of identifying electronically stored data that is particularly described in **Attachment B**, which constitute instrumentalities, evidence, and fruits of violations of 18 U.S.C. § § 1956, 1957, and 21 U.S.C. §§ 841(a)(1), 846. The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

5. Based on my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § § 1956 and 1957, and 21 U.S.C. §§ 841(a)(1) and 846 have been committed by YUAN YUAN LUO (LUO), LIANG WU (LIANG), and YAN BING WU (YAN BING), and others. There is also probable cause to search the property described in **Attachment A** for instrumentalities, evidence, and fruits of these crimes, as described in **Attachment B**.

6. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search

warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

## BACKGROUND OF INVESTIGATION

7. Law enforcement, specifically the DEA, is conducting a criminal investigation into money laundering activities carried out by LUO, LIANG, and YAN BING, specifically their laundering money derived from the cultivation and distribution of marijuana.

8. On October 19, 2022, a federal grand jury returned an indictment charging LUO, LIANG, and YAN BING with a money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), as well as counts of substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Arrest warrants for LUO, LIANG, and YAN BING were subsequently issued.

9. The indictment was the culmination of a months-long investigation into LUO, LIANG and YAN BING and their associates that began with DEA Denver utilizing a confidential source (CS1) in April of 2021. CS1 informed investigators that LUO and her husband (since identified as LIANG) were involved in the marijuana industry and needed someone that could launder funds derived from marijuana sales. On five separate occasions,

4

DEA utilized CS1 in Colorado and Edmond, Oklahoma, to pick up an approximate total of $479,000 in bulk U.S. currency.

10.  For example, as part of the conspiracy, on or about May 4, 2021, LUO began coordinating to have CS1 pick up $10,000 from YAN BING WU ("YAN BING") at YAN BING's residence in Commerce City, Colorado. After CS1 received the $10,000 from YAN BING, LUO instructed CS1 to retain a 1.6% commission, or $160, and use the remaining $9,840 to purchase a cashier's check, made payable to YAN BING. On May 6, 2021, law enforcement obtained cashier's check number 7090004342 for $9,840 from a Wells Fargo branch in Denver, Colorado. Per LUO's instructions, CS1 endorsed the check in YAN BING's name and then sent LUO a photo of both sides of the check so that LUO could conduct a mobile deposit.

11.  Later that month, on May 24, 2021, LUO coordinated the delivery of $50,800 to CS1 in Denver, Colorado, instructing CS1 to retain $800, or 1.6%, in commission and use the remaining $50,000 to purchase a cashier's check, made payable to Ruping Huang. Law enforcement then obtained cashier's check number 0489908166 for $50,000, payable to Ruping Huang, from a Wells Fargo branch in Denver, Colorado. LUO then had CS1 coordinate with an individual later identified as Tongfei Wu to deliver the $50,000 cashier's check to Ruping Huang in Denver, which CS1 did on May 25, 2021.

12. For the third transaction, LUO arranged for the delivery of $20,300 to CS1 in the Denver area on June 10, 2021, instructing CS1 to retain a 1.6% commission, or $300, and use the remaining $20,000 to purchase three different cashier's checks: (1) one check for $7,000, made payable to YAN BING, (2) one check for $7,000, made payable to LUO, and (3) one check for $6,000, made payable to LIANG. Law enforcement then obtained three separate cashier's checks from a Wells Fargo branch in Denver: (1) cashier's check number 0489907065 for $7,000, payable to LUO, (2) cashier's check number 0489907064 for $7,000, payable to YAN BING, and (3) cashier's check number 0489907066 for $6,000, payable to LIANG. Per LUO's instructions, CS1 then endorsed the checks and sent LUO photos of the checks so that LUO could make a mobile deposit.

13. The fourth transaction occurred on October 27, 2021. That day, CS1 met LUO and LIANG at their residence located at 612 Martina Lane, Edmond, Oklahoma (the "Martina Lane Residence"). YAN BING let CS1 into the residence, explaining that LUO and LIANG would be home soon. When LUO and LIANG arrived, they provided CS1 with $142,800 in U.S. currency and instructed CS1 to keep $2,800 and to use the remaining cash to purchase a cashier's check for $140,000, made payable to Enjin Sun—whom law enforcement has identified as the owner of marijuana grow(s) located at 54200 S 36500 Rd, Cleveland, Oklahoma (known as Enjin Green LLC). Law

enforcement then obtained the cashier's check number 0478802663, payable to Enjin Sun for $140,000, from a Wells Fargo branch, and, as LUO had requested, mailed it to Enjin Sun at 612 Martina Lane, Edmond, Oklahoma.

14.   Finally, on March 17, 2022, in Edmond, Oklahoma, LUO and LIANG provided CS1 with $255,000, instructing CS1 to retain a 2% commission, or $5,000, and to use the remaining $250,000 to (1) purchase a cashier's check for $75,000, made payable to Yi Wu, (2) purchase a cashier's check for $125,000 made payable to Feiran Wang, and (3) conduct a $50,000 wire transfer to Lennar Title, Inc.  LUO instructed CS1 to mail the two cashier's checks to the Martina Lane Residence, just like the time prior.  Law enforcement then obtained (1) cashier's check number 0489901157, payable to Yi Wu for $75,000, and (2) cashier's check number 0489901030, payable to Feiran Wang for $125,000, and mailed them to 612 Martina Lane, Edmond, Oklahoma. Law enforcement also wired the $50,000 to Lennar Title, Inc., as LUO had requested.

15.   On November 8, 2022, law enforcement executed the arrest warrants for LUO, LIANG, and YAN BING.  They also executed a series of search warrants, including at 5705 Country Club Terrace, Edmond, Oklahoma (the COUNTRY CLUB RESIDENCE), which law enforcement had identified as LUO's new residence.

16. LUO and YAN BING were arrested during a traffic stop at approximately 7:45 a.m., near the intersection of Portland Avenue and N Coffee Creek Rd, in Oklahoma City. LIANG was arrested at the COUNTRY CLUB RESIDENCE upon law enforcement executing the search warrant there. Upon searching the COUNTRY CLUB RESIDENCE, law enforcement found items of dominion and control for LUO, LIANG, and YAN BING, which leads me to believe that all three were living at the residence. For example, mail addressed to LUO was found throughout the residence; there was also a large wedding photo of LUO and LIANG hanging in the master suite. Additionally, throughout the suite were numerous documents, ID cards, and bank cards bearing both LUO's and LIANG's names. As for YAN BING, numerous bank cards from both American and Chinese banks were found in a wallet located in an upstairs bedroom. Within this bedroom, a Chinese passport for YAN BING was also located. All of this further confirmed to investigators that LUO, LIANG, and YAN BING were living at the COUNTRY CLUB RESIDENCE.

17. Law enforcement also found significant evidence of marijuana trafficking. Throughout the residence investigators located numerous sales receipts for marijuana transaction between multiple grows, a drug ledger indicating numerous different marijuana strains being sold, and approximately $71,000 in receipts for marijuana grow equipment.

Additionally, documents located at the residence show LIANG and LUO have their vehicle insurance registered to a known marijuana grow location in Maramec, Oklahoma. Investigators also located Lin Feng in the residence, whom they have identified as an employee of the Maramec marijuana grow (the "Maramec Grow").[1] Inside the residence, investigators also located Qin Fang, YAN BING's husband, who also owns a marijuana grow in Mulhall, Oklahoma. All of this leads me to conclude that there is probable cause to believe that LUO, LIANG, and YAN BING are involved in marijuana trafficking and are engaged in violations of 21 U.S.C. §§ 841(a)(1) and 846.

18. Pursuant to the above-described arrests and search of the COUNTRY CLUB RESIDENCE, law enforcement recovered several cell phones. Because this affidavit in support of the search of **Target Phone 10** is

---

[1] On Tuesday, November 29, 2022, investigators with OBN conducted an Inspection of Jack Lin LLC and DDLQ LLC (i.e., the Maramec Grow) and documented that the grow was operating illegally. Specifically, investigators located approximately 75 pounds of undocumented processed marijuana bud located in three duffle bags. When questioned, workers at the facility stated this marijuana was set aside to be picked up by an unknown individual for "testing." I know based on my training and experience, however, that this amount of product for testing is highly unusual and does not comport with industry standards. Moreover, the product was packaged and vacuum-sealed, thus indicating it was ready for distribution. In addition, rooms on the farm containing several hundred plants were found to be untagged and undocumented. All of this indicates to me, based on my training and experience, that the Maramec Grow, where Feng Lin works, is growing undocumented marijuana plants, creating undocumented harvests, and selling marijuana on the black market.

9

being submitted in conjunction with affidavits for the other phones recovered that day—and for ease of review—I have listed each phone recovered, as well as a description of where it was found:

a) Target Phone 1: Huawei Mate phone in clear and white case with paw print holder.  Target Phone 1 was found in a nightstand in the master bedroom of the COUNTRY CLUB RESIDENCE.

b) Target Phone 2: Huawei P40 series black phone with exterior back crack. Target Phone 2 was found charging on the bed in the master bedroom of the COUNTRY CLUB RESIDENCE.

c) Target Phone 3: iPhone 13 Pro series phone in lime green case. Target Phone 3 was located on the headboard of the bed in the master bedroom of the COUNTRY CLUB RESIDENCE.

d) Target Phone 4:  silver iPhone 13 Pro series phone in clear case bearing an image of a rabbit on the back. Target Phone 4 was located charging on the bed in the master bedroom of the COUNTRY CLUB RESIDENCE.

e) Target Phone 5: blue iPhone 13 Pro series phone in case bearing a $20 bill sticker on the back. Target Phone 5 was located on the bedside table of a second-floor bedroom in the COUNTRY CLUB RESIDENCE, occupied by Biao Wu.

f) Target Phone 6: Samsung Galaxy Z Fold phone in clear "Astronaut" case with a lion sticker on the back. Target Phone 6 was located on the bedside table of a second-floor bedroom in the COUNTRY CLUB RESIDENCE, occupied by Biao Wu.

g) Target Phone 7: Samsung Galaxy Z Flip in clear case bearing a female cartoon character with an attached yellow bracelet. Target Phone 7 was located in a purse in the entryway attached to the living room of the COUNTRY CLUB RESIDENCE.

h) Target Phone 8: white iPhone 7 in a black case bearing a night sky design on the back. Target Phone 8 was located on the floor in a second-floor bedroom of the COUNTRY CLUB RESIDENCE, occupied by Feng Lin.

i) Target Phone 9: Huawei phone in a black and white case bearing Chinese characters on the back. Target Phone 9 was located on the bed of second floor bedroom in the COUNTRY CLUB RESIDENCE, occupied by Feng Lin.

j) **Target Phone 10**: blue Huawei phone in a clear case containing a "Lycamobile" card. **Target Phone 10** was located next to the bed of a second-floor bedroom in the COUNTRY CLUB RESIDENCE, occupied by Feng Lin.

19. Based upon my training and experience, I am aware that individuals involved in trafficking illegal drugs and money laundering often use cell phones to maintain contact with other customers and co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal narcotics and launderers of those proceeds. I also know that individuals involved in drug trafficking often use more than one cell phone. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking and money laundering offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

20. Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and/or store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cell phones. And, just as LUO instructed CS1 to send her photos of the obtained cashier's checks, as described above, I

know that money launderers will often take and/or store photographs of laundered instruments or other documents on their cell phones.

21. Based on my training and experience, I know that electronic devices like **Target Phone 10** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can sometimes be recovered with forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

22. Based on the above information, there is probable cause to believe that violations of 18 U.S.C. § § 1956 and 1957 and 21 U.S.C. §§ 841(a)(1) and 846 have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on **Target Phone 10**. Therefore, I respectfully request that this Court issue a search warrant for **Target Phone 10**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Target Phone 10** consistent with the warrant. The examination may require law enforcement to

employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of **Target Phone 10** to human inspection in order to determine whether it is evidence described by the warrant.

24. Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

*[signature]*
SEAN LIVELY
Special Agent, DEA

SUBSCRIBED AND SWORN to before me this 2nd day of December, 2022.

*[signature]*
SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is described as a blue Huawei phone in a clear case containing a "Lycamobile" card (**Target Phone 10**).  **Target Phone 10** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Oklahoma City, Oklahoma.  This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.  **Target Phone 10** is depicted below.





## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of the crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841(a)(1) and Section 846:

1. All records on the Subject Phone described in Attachment A that relate to violations of 18 U.S.C. §§ 1956 and 1957, and 21 U.S.C. §§ 841(a)(1) and 846 involving YUAN YUAN LUO, LIANG WU, and YAN BING WU and others from April 2021, to the present, including:

    a. lists of customers and related identifying information;

    b. lists of co-conspirators and related identifying information;

    c. records of communications with customers or co-conspirators, whether such communication be a telephone call, text message (e.g., SMS or MMS), instant message, or communication through an application stored on the phone;

    d. records detailing the types, amounts, or prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

   e. any information related to the sources of drugs, including names, addresses, phone numbers, or any other identifying information);

   f. any audio recordings, pictures, video recordings, or still-captured images on the Subject Phone related to the purchase, sale, transportation, or distribution of controlled substances or the collection, transfer or laundering of drug proceeds;

   g. all bank records, checks, credit card bills, account information, and other financial records; and

   h. any location data related to the acquisition or distribution of controlled substances.

 2. Evidence of user attribution showing who used or owned the Subject Phone described in Attachment A at the time the things described in this warrant were created, edited, or deleted, including:

   a. logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   b. text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

    c.    photographs;

    d.    records of Internet Protocol addresses used; and

    e.    records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.